UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| WESTFIELD INSURANCE COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>S&L BUILDERS, LLC *et al.*,<br><br>Defendants. | CAUSE NO. 3:19-CV-1026 DRL-MGG |

### OPINION & ORDER

A business relationship among members of S&L Builders, LLC soured to the point that Matthew Schwartz sued S&L, Steve Chupp, and Waneta Chupp. This case presents the coverage question whether Westfield Insurance Company must provide a defense and indemnity. Westfield seeks a declaration that it owes no such duties. Both sides filed summary judgment motions. The court grants the defense's motion for partial summary judgment, making other rulings in consequence.

### BACKGROUND

Westfield issued a commercial package policy to S&L for two policy periods, which together spanned December 2, 2016 to December 2, 2018 (ECF 48-2). Coverage B of the policy addresses personal and advertising injury liability—the issue on which this case turns.

Under the policy, Westfield agreed to "pay those sums that the insured [S&L] becomes legally obligated to pay as damages because of 'personal and advertising injury' to which this insurance applies." The policy defines personal and advertising injury as "injury, including consequential 'bodily injury,'" arising from one of seven types of offenses, including "[f]alse arrest, detention or imprisonment." The policy otherwise excludes coverage if S&L knowingly violated a person's rights.

On August 27, 2018, Matthew Schwartz sued S&L and its members (the Chupps) in Elkhart County, Indiana (ECF 48-1). He alleged several causes of action, including trespass, intentional

infliction of emotional distress, breach of several contracts, breach of fiduciary duty, and unjust enrichment. A former member in S&L, Mr. Schwartz's claims arose largely from a damaged business relationship with the Chupps, including their alleged manipulation of his capital account, misappropriation of assets, non-payment of his services, and other mismanagement.

Argument centers on count one. In count one, Mr. Schwartz alleges that Waneta Chupp and an unknown male (used for "muscle") came to his home in Bremen, Indiana on January 29, 2018. He says "[i]n an extremely loud, threatening, and intimidating manner, [she] demanded return of a pickup truck given by defendant S&L in approximately 2015 as payment for services to an employee of S&L, who had later left its employ and was then in the employ of Matthew R. Schwartz." Mr. Schwartz retreated inside his home. Ms. Chupp and the muscle trespassed into his home, screaming and demanding the truck's return. Mr. Schwartz's wife and young children witnessed this conduct and feared for their safety. To protect his family, Mr. Schwartz "gave the truck keys to [Ms. Chupp] under duress." Mr. Schwartz alleges that her "extreme and outrageous trespass was done intentionally and recklessly and caused damage and severe emotional distress to [him], his wife, and small children."

On July 16, 2019, S&L and the Chupps notified Westfield of the lawsuit and requested that Westfield provide a defense, and if necessary, indemnity (ECF 48-3). On August 21, 2019, counsel for S&L and the Chupps sent a letter to Westfield, urging it to provide S&L with a defense and indemnity under the terms of the insurance policy (ECF 48-4). After investigating the claim, Westfield responded to that letter on October 9, 2019, denying coverage under the policy (ECF 48-5). Westfield filed this lawsuit on November 11, 2019, seeking a declaratory judgment that it does not owe coverage to S&L and the Chupps for the underlying lawsuit (ECF 1). On January 14, 2020, S&L and the Chupps filed a counterclaim, arguing that Westfield breached its insurance policy and acted in bad faith (ECF 16).

On December 18, 2020, Westfield filed a summary judgment motion (ECF 47) and a motion for oral argument (ECF 49). On January 15, 2021, S&L and the Chupps filed a motion for partial

summary judgment on the issue of whether Westfield has the duty to defend them in the underlying lawsuit (ECF 51). On January 22, 2021, the court consolidated the briefing on the motions, ordering Westfield to file a joint response and reply brief to the pending summary judgment motions and S&L and the Chupps to thereafter file a reply brief (ECF 54).

On January 29, 2021, the parties jointly stipulated to dismiss the counterclaim for breach of the duty of good faith (ECF 55). On February 12, 2021, Westfield filed a motion for reconsideration, asking the court to reconsider its order requiring Westfield to file a renewed motion for default judgment against Mr. Schwartz and to instead resolve the claims against Mr. Schwartz as part of the summary judgment ruling (ECF 57). These motions are now ripe for review.

## STANDARD

Summary judgment is warranted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The non-moving party must present the court with evidence on which a reasonable jury could rely to find in his favor. *Beardsall v. CVS Pharmacy, Inc.*, 953 F.3d 969, 972 (7th Cir. 2020). The court must construe all facts in the light most favorable to the non-moving party, view all reasonable inferences in that party's favor, *Bellaver v. Quanex Corp.*, 200 F.3d 485, 491-92 (7th Cir. 2000), and avoid "the temptation to decide which party's version of the facts is more likely true," *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003); *see also Joll v. Valparaiso Comty. Schs.*, 953 F.3d 923, 924 (7th Cir. 2020). In a case involving cross-motions for summary judgment, each party receives the benefit of all reasonable inferences drawn from the record when considering the opposing party's motion. *Tegtmeier v. Midwest Operating Engineers Pension Trust Fund*, 390 F.3d 1040, 1045, (7th Cir. 2004).

In performing its review, the court "is not to sift through the evidence, pondering the nuances and inconsistencies, and decide whom to believe." *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994). Nor is the court "obliged to research and construct legal arguments for parties." *Nelson v.*

*Napolitano*, 657 F.3d 586, 590 (7th Cir. 2011). Instead, the "court has one task and one task only: to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial." *Id.* The court must grant a summary judgment motion when no such genuine factual issue—a triable issue—exists under the law. *Luster v. Ill. Dept. of Corrs.*, 652 F.3d 726, 731 (7th Cir. 2011).

DISCUSSION

The court (sitting in diversity) applies Indiana law here. *See Erie R. Co. v. Tompkins,* 304 U.S. 64, 78 (1938); *Ruiz v. Blentech Corp.,* 89 F.3d 320, 323 (7th Cir. 1996). The parties agree that Indiana law applies. Under Indiana law, interpretation of insurance policy is a question of law to be decided by the court. *See National Fire and Cas Co. v. West By and Through Norris*, 107 F.3d 531, 534-35 (7th Cir. 1997) (citations omitted). The insured has the burden of proving coverage, though the insurer bears the burden of demonstrating that any exclusion applies. *Id.* at 535. Insurance policies are subject to the same rules of interpretation as other contracts in Indiana: words are given their plain and ordinary meaning. *Id.* (citations omitted).

An insurer's duty to defend is broader than its duty to indemnify. *Seymour Mfg. Co., Inc. v. Com. Union Ins. Co.*, 665 N.E.2d 891, 892 (Ind. 1996). "An insurer is obligated to defend its insured against suits alleging facts that might fall within the coverage of the policy." *Property-Owners Ins. Co. v. Virk Boyz Liquor Stores, LLC*, 219 F. Supp.3d 868, 873 (N.D. Ind. 2016) (citing *Fed. Ins. Co. v. Stroh Brewing Co.*, 127 F.3d 563, 566 (7th Cir. 1997)). "When the underlying factual basis of the complaint, even if proved true, would not result in liability under the insurance policy, the insurance company can properly refuse to defend." *Wayne Twp. Bd. of Sch. Comm'rs v. Ind. Ins. Co.*, 650 N.E.2d 1205, 1208 (Ind. Ct. App. 1995); *accord Transamerica Ins. Servs. v. Kopko*, 570 N.E.2d 1283, 1285 (Ind. 1991).

The court "determine[s] [an] insurer's duty to defend from the allegations contained within the complaint and from those facts known or ascertainable by the insurer after reasonable investigation." *Defender Sec. Co. v. First Mercury Ins. Co.*, 803 F.3d 327, 334 (7th Cir. 2015) (applying

4

Indiana law). "[I]f the pleadings reveal" or "the underlying factual basis of the complaint" shows "that a claim is clearly excluded under the policy, then no defense is required." *Id.* (internal citations omitted). When there is no possible factual or legal basis on which the insurer might be obligated to indemnify, there is no duty to defend. *City of Gary v. Auto-Owners Ins. Co.*, 116 N.E.3d 1116, 1121 (Ind. Ct. App. 2018).

The court gives clear and unambiguous language its plain and ordinary meaning while ambiguous terms are construed against the insurer. *See Sheehan Constr. Co., Inc. v. Cont'l Cas. Co.*, 935 N.E.2d 160, 169 (Ind. 2010); *Property-Owners*, 219 F.Supp.3d at 872.

  A. *Coverage B—Personal and Advertising Injury Liability.*

The parties agree that, absent an applicable exclusion, Westfield must defend S&L in the underlying lawsuit if the complaint there alleges conduct that constitutes false arrest, detention or imprisonment under the policy's Coverage B. S&L and the Chupps argue that the state court allegations for trespass and intentional infliction of emotional distress can be read to support a claim for false arrest, detention, or imprisonment, thereby triggering insurance coverage.

In his complaint, Mr. Schwartz doesn't use the words "false arrest, detention, or imprisonment," but that doesn't mean Westfield is off the hook. *See Indiana Ins. Co. v. North Vermillion Community School Corp.*, 665 N.E.2d 630, 635 (Ind. Ct. App. 1996). The court instead focuses on whether the alleged conduct fairly falls within the meaning of these offenses.

The policy doesn't define "false arrest, detention, or arrest." The court applies the plain meaning of these words, *see Sheehan Constr.*, 935 N.E.2d at 169, interpreting them "from the perspective of an ordinary policyholder of average intelligence," *Travelers Indem. Co. v. Summit Corp. of America*, 715 N.E.2d 926, 936 (Ind. Ct. App. 1999). Dictionaries become commonplace in this exercise. *See id.* at 937; *Asbury v. Indiana Union Mut. Ins. Co.*, 441 N.E.2d 232, 237 (Ind. Ct. App. 1982).

The definitions of arrest, detention, and imprisonment include the feature of confinement or restraint. For instance, the Oxford English Dictionary defines "arrest" as "the act of stopping anything in its course; a stop put to anything, stoppage, stay, check," or the "apprehending or restraining of one's person." *Arrest*, Oxford English Dict., www.oed.com (last visited July 27, 2021). It defines "detention" as "[t]he action of detaining, or condition of being detained . . . [k]eeping in custody or confinement; arrest." *Detention*, Oxford English Dict., www.oed.com (last visited July 27, 2021). And it defines "imprisonment" as "[t]he action of imprisoning, or fact or condition of being imprisoned; detention in a prison or place of confinement; close or irksome confinement; 'forcible restraint within bounds;' incarceration." *Imprisonment*, Oxford English Dict., www.oed.com (last visited July 27, 2021).[1] The legal definition of false imprisonment in Indiana also includes a component of unlawful restraint. *See Ali v. Alliance Home Health Care, LLC*, 53 N.E.3d 420, 432 (Ind. Ct. App. 2016) ("false imprisonment amounts to an unlawful restraint upon one's freedom of movement or the deprivation of one's liberty without consent") (internal quotations omitted).

Mr. Schwartz alleges that Ms. Chupp and an unknown male, brought with her for "muscle," came to his residence. In an "extremely loud, threatening, and intimidating manner," she demanded return of a pickup truck. Mr. Schwartz retreated into his house, but Ms. Chupp and her companion trespassed inside, screaming and demanding return of the truck. To protect his family, Mr. Schwartz says he ultimately gave Ms. Chupp the truck keys, doing so "under duress."

S&L and the Chupps zero in on that last allegation—that Mr. Schwartz gave the keys to Ms. Chupp under duress. That phrase has important meaning here, particularly when alleged among these other facts. Duress means "[f]orcible restraint or restriction; confinement; imprisonment[.]" *Duress*,

---

[1] Webster's Third New International Dictionary offers similar meanings, defining "arrest" as "the act of stopping or restraining (as from further motion)," defining "detention" as "the act or fact of detaining: a) a holding in custody…b) a holding back," and defining "imprisonment" as "the act of imprisoning or the state of being imprisoned: confinement, restraint." Webster's Third New International Dictionary 121, 616, 1137 (2002) (removing capitalization).

6

Oxford English Dictionary, www.oed.com (last visited July 27, 2021); *see also* Webster's Third New International Dictionary 703 (2002) ("restraint or check by force (as arrest or imprisonment)"). The allegation thus mirrors the plain meaning of "false arrest, detention, or imprisonment." Though Westfield advances a more conservative perspective, the surrounding allegations underscore the potentiality of coverage: as alleged, Ms. Chupp brought muscle with her to threaten, intimidate, and in actuality confine Mr. Schwartz until he relented under duress and coughed up the keys.

Westfield says Mr. Schwartz maintained freedom of movement because he retreated into his house. That may be one reading; the other is that he had no other choice because of how he was confronted and confined. Indeed, even if that particular response were more than a Hobbesian choice, once in the home he was confined by their trespass, conduct, and "muscle" and thence under their duress—that is to say, these allegations at least might fall within the policy's coverage. *See Defender*, 803 F.3d at 334; *Property-Owners*, 219 F. Supp.3d at 873.

Westfield attempts to liken this case to *Westfield Ins. Co. v. Gil Behling & Son, Inc.*, 2010 U.S. Dist. LEXIS 24328 (N.D. Ind. Mar. 15, 2010) (Springmann, J.). The court there declined to find that Westfield had a duty to defend. The underlying complaint alleged state antitrust claims. *Id.* at 22. The insured argued that the complaint also alleged facts of defamation or disparagement, thereby triggering coverage. *Id.* at 22-23. But the court found that the complaint contained "no factual allegation that [the insured] made any false, libelous, slanderous, misleading, or defamatory statement that disparaged [the complainant's] goods, products, or services." *Id.* at 37. The court today deals with a quite different complaint, quite different allegations. In contrast, Mr. Schwartz's complaint contains an allegation that he relented only under duress, and that allegation in the context of the others adumbrates the theory that he was unlawfully restrained without his consent. *See Ali*, 53 N.E.3d at 432.

Westfield adds that S&L and the Chupps analyzed the word "duress" in a vacuum and that the analysis should instead focus on the nature of the complaint. *See Transamerica Ins. Servs. v. Kopko*,

7

570 N.E.2d 1283, 1285 (Ind. 1991) ("duty to defend is determined solely by the nature of the complaint"). That is exactly what the court has done by considering the allegations as a whole. Westfield views the overall nature of the underlying complaint as a business dispute. Though that may be true for certain counts, it isn't true for all counts. In *Kopko*, the underlying complaint sounded in deliberate tort and fraud, and the insured tried to argue that it also sounded in negligence based on the word "neglecting." *Id.* The court didn't buy the argument. *Id.* Here, there's likewise no stretch from the alleged intentional torts and the covered offenses. This doesn't construe any ambiguity in "duress" against the insurer, particularly when that word isn't in the policy; instead, it couches this allegation among all the complaint's allegations to determine that the state court complaint triggers Westfield's duty to defend.

    B.    *Bodily Injury.*

In a footnote in its summary judgment motion, Westfield says Coverage B can't be satisfied because there is no "bodily injury," incorporating argument offered under Coverage A that no longer proves in dispute.[2] But Coverage B isn't limited to bodily injury. It covers "personal and advertising injury"—which means "injury, including consequential 'bodily injury.'" Westfield develops no argument why the injury here, though perhaps not "bodily injury," *see, e.g., Armstrong v. Federated Mut. Ins. Co.*, 785 N.E.2d 284, 292 (Ind. Ct. App. 2003); *Wayne Twp. Bd. of Sch. Comm'rs v. Indiana Ins. Co.*, 650 N.E.2d 1205, 1210 (Ind. Ct. App. 1995), nonetheless cannot be "injury" within the policy's meaning. Indeed, Westfield's opening argument seems to recognize allegation of an injury, just not a physical one. The insurance company abandoned this point by not addressing it in reply. *See Maclin v. SBC Ameritech*, 520 F.3d 781, 788 (7th Cir. 2008). The court's conclusion thus still stands—Westfield has the duty to defend under Coverage B of the policy.

---

[2] The court thus grants Westfield's summary judgment motion only under Coverage A.

C.   *Exclusion for Knowing Violation of Rights of Another.*

Westfield argues that, even if it has the duty to defend under Coverage B of the policy, the knowing violation exclusion bars coverage. Under that exclusion, "insurance does not apply to…'[p]ersonal and advertising injury' caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict 'personal and advertising injury.'" Westfield says Ms. Chupp knowingly perpetrated the conduct that resulted in the purported false arrest, detention, or imprisonment.

As the insurer, Westfield bears the burden of demonstrating that this exclusion applies. *See National Fire*, 107 F.3d at 535. Westfield points to the allegations in Mr. Schwartz's complaint that "connote deliberate, knowing, and intentional conduct" (ECF 56 at 8). These allegations include the following: "Waneta demanded return of a pickup truck;" "Waneta and her accompanying unknown male 'muscle' trespassed into the Schwartz residence;" and "Waneta's extreme and outrageous trespass was done intentionally and recklessly" (ECF 56 at 8 (citing ECF 48-1 at 3)).

Westfield seems to argue that Ms. Chupp's knowledge can be inferred from the fact that she allegedly acted "intentionally." In its brief, Westfield couches the word "knowing" in between "deliberate" and "intentional" and later after "deliberate" (ECF 56 at 8). The covered offense—false arrest, detention or imprisonment—is an intentional tort. *See, e.g.*, *Wal-Mart Stores, Inc. v. Bathe*, 715 N.E.2d 954, 959 (Ind. Ct. App. 1999) (referring to false arrest and false imprisonment as intentional torts); Ind. Model Civ. Jury Inst. 3113 (2020) (including the definition for false imprisonment and false arrest in the chapter on intentional torts). It would be a distortion of the policy to say it provides coverage for an intentional tort only to take coverage away for that same intentional tort when the insured acts knowingly and when the insurer's only basis for demonstrating knowledge comes from the fact that the insured acted intentionally. *See Cincinnati Ins. Co. v. Eastern Atlantic Ins. Co.*, 260 F.3d 742, 746 (7th Cir. 2001) ("Some of the torts expressly covered by the umbrella policy are intentional

9

torts, such as false arrest…and the cases just cited hold that the policy should not be interpreted as taking back with one hand what it gave with another, by excluding coverage of those torts because they are intentional."); *see also USA Life One Ins. Co. of Ind. v. Nuckolls*, 682 N.E.2d 534, 539 (Ind. 1997) (refusing to interpret policy to an absurd result).

The court in *Davidson v. Cincinnati Ins. Co.*, 572 N.E.2d 502 (Ind. Ct. App. 1991), applied this same reasoning. In that case, the insurance policy purported to provide coverage for claims of malicious prosecution and slander. *Id.* at 506. An intent to commit a wrongful act is required in the majority of cases for each of these offenses. *Id.* at 508. The insurance company tried to invoke the exclusion for damages expected or intended by the insured. The court held that it was reasonable for the insured to expect coverage if he were to be accused of malicious prosecution or slander, and the policy as a whole should be enforced to satisfy his reasonable expectations. *Id.* The policy would only provide illusory coverage if, on the one hand, it covered intentional offenses but, on the other hand, excluded coverage for these same offenses if the insured acted intentionally. *Id.*

Likewise here, if the requisite knowledge could be inferred merely from the allegation that the insured acted intentionally, the policy would operate in an illusory and absurd way. In addition, whatever knowledge can be inferred from the underlying complaint, it cannot be read to establish the insured's knowledge that its member's trespass or intentional conduct would inflict an injury within the policy's meaning. *See Travelers Prop. Cas. Co. of Am. v. Kan. City Landsmen, L.L.C.*, 592 Fed. Appx. 876, 883 (11th Cir. 2015); *see, e.g., Marshall v. JP Morgan Chase Bank*, 2013 U.S. Dist. LEXIS 37367, 9-10 (N.D. Ind. Mar. 19, 2013) (no knowledge requirement for an injury to prove a trespass claim). The policy's exclusion requires knowledge of both a violation of another person's rights and that the conduct would inflict "personal and advertising injury." For these two reasons, the exclusion doesn't bar a duty to defend.

D.    *Duty to Indemnify.*

In its summary judgment motion, Westfield argues that, because it has no duty to defend, it also has no duty to indemnify. Having found that Westfield has a duty to defend, the court now addresses the duty to indemnify. The underlying lawsuit filed by Mr. Schwartz is still pending, with a trial date set for September 21, 2021. *See* MyCase, *Matthew Schwartz v. S&L Builders, LLC, Steve Chupp, Waneta Chupp*, Case No. 20D02-1808-PL-000192 (last visited July 27, 2021). The issue of indemnity is not ripe for review because there hasn't been a finding of liability in the underlying lawsuit. *See Indiana Ins. Co. v. Kopetsky*, 11 N.E.3d 508, 529 (Ind. Ct. App. 2014) ("issue of indemnity is not ripe for review on any basis where there has been no finding of liability in the underlying lawsuit"). That said, the court dismisses this portion of Westfield's claim, without prejudice, as premature at this stage. *See American Bankers Ins. Co. of Florida v. Shockley*, __ F.3d __, 2021 U.S. App. LEXIS 19107, 16-17 (7th Cir. June 28, 2021) (question of whether the insurer has a duty to indemnify is only ripe if the insured has already incurred liability in the underlying lawsuit); *Travelers Ins. Cos. v. Penda Corp.*, 974 F.2d 823, 833-34 (7th Cir. 1992).

E.    *Stipulations.*

Westfield argues that the insuring agreement for Coverage A isn't satisfied. Coverage A is triggered when the insured becomes legally obligated to pay damages because of bodily injury or property damage to which the insurance applies (ECF 48-2 at 27). The defense agrees that Coverage A is not triggered (ECF 52 at 5 n.3).

Westfield also argues that it did not breach its duty of good faith. The parties later filed a joint stipulation dismissing the counterclaim for breach of the duty of good faith (count three). The court treats the joint stipulation (ECF 55) under Rule 15. Because this isn't a proposed dismissal of the entire action, Rule 41(a) doesn't apply. *See Taylor v. Brown*, 787 F.3d 851, 857-58 (7th Cir. 2015). Rule 15 instead authorizes a pleading's amendment that drops singular parties or claims, *id.* at 858, and the

"court should freely give leave when justice so requires"—not least when the parties stipulate. The court dismisses this count by way of amendment instanter under Rule 15.[3]

## CONCLUSION

Accordingly, the court DENIES Westfield's summary judgment motion except as to Coverage A (ECF 47), DENIES Westfield's motion for oral argument as unnecessary (ECF 49), GRANTS S&L's and the Chupps' partial summary judgment motion on the issue of Westfield's duty to defend only (ECF 51), DISMISSES the counterclaim for breach of the duty of good faith (count three) (ECF 55), and GRANTS Westfield's motion for reconsideration because this ruling resolves the case against all parties, including Matthew Schwartz (ECF 57). Because no other ripe issues remain for adjudication, the court DISMISSES the remainder of this case without prejudice. This order terminates the case.

SO ORDERED.

July 28, 2021                                                *s/ Damon R. Leichty*
                                                                       Judge, United States District Court

---

[3] As written, the rules could prove terribly inefficient for counsel and clients if they were required to file an amended pleading (here a counterclaim), thereby triggering a new answer, just to perform the simple task of removing a claim or party that everyone agrees has turned out immaterial to the suit, not least forgetting the longstanding tradition of pursuing this relief in many federal courts facilely under Rule 41(a). So the court deems this amendment (by deletion rather than interlineation) effectuated through this order without need to file amended pleadings.

12